11 jurors unanimously determined that a partnership existed under Rhode Island law from 1997-2011. The District Court erred in overturning that verdict by re-weighing the evidence and not being faithful to the totality of the circumstances test under Rhode Island law. Under this court's de novo review, we're asking that the jury verdict be reinstated. Now, the District Court did agree with the jury in one respect. It agreed that there was a partnership from 1997 to March or April of 1999. A partnership for a specific purpose, limited in duration, not a partnership at will. It was not a partnership at will, Your Honor. It was for a specific purpose, which was to develop and sell a medical device business. And generally for a limited duration. Well, this wasn't for a limited duration necessarily. The goal here was to sell this business, develop and sell this medical device business. As soon as possible. The plan was. Certainly, they wanted to do so when they had a medical device or devices that were worth selling. What they wanted to do was increase the value of this business. And remember, Your Honor. Well, what they wanted to do more specifically. Maybe I'm wrong, but I think the plan was that they would get someone to produce these devices. They would then be able to sell it pretty soon for a substantial profit. Originally, that's correct. What they wanted to do was to have an outside manufacturer manufacture this product. Wait, time out. On page 245 of the record, it's my understanding that Mr. partnership between himself and Mr. Zeitzel was to develop the instrument, obtain intellectual property on it, and sell the intellectual property as soon as possible. Not to obtain an outside manufacturer, mass produce the product, and then sell the whole business. They were doing, which is not uncommon, coming up with a good idea, getting intellectual property on it, and then selling intellectual property. Am I wrong about the record? Judge, on page 340 and 333, what was represented by Dr. Zeitzel was that this was a partnership, an umbrella partnership, that originally started out where they were going to, correct, they were going to develop these glottoscopes. But then, and have it manufactured by an outside manufacturer. I'm on page 340 and 341. What can you show me, direct me exactly to what you'd like me to look at? So, Judge, if 340, it is- Didn't change the underlying relationship. Is line 1314 right? Exactly, Your Honor. This is Dr. Zeitzel telling Mr. Devona. He said it doesn't change our underlying relationship. Now, we're talking about the time frame in 1999 when the parties had, when Dr. Zeitzel had created Endocraft. And there was this- It was a sales agreement. Exactly, Your Honor. He said, and this is what the jury was entitled to believe, was that the umbrella of the partnership is still there, and that whatever we make and sell this stuff is going to be, that's when we are going to end it. Question- He said that two times, and there are two pieces of testimony that say essentially the same thing. Exactly, Your Honor. Exactly. And then there's a corroboration from the other gentleman. That's right. So, that's right, Your Honor. Stephen Fusco heard Dr. Zeitzel- After the creation of Endocraft and the agreement. Exactly, Your Honor. The jury could determine based upon, again, we're talking about a jury verdict. And all inferences and all evidence are supposed to be- That after Fusco's statement was, after the creation was, Fusco said, I heard the doctor say, I heard the doctor say, well, at the end, he's going to get a million bucks when we sell this. Exactly, Your Honor. Exactly. Which is testimony in support of the notion that an umbrella partnership to have an endgame selling it was still alive. Exactly, Your Honor. I'm sorry. Let me make sure. I just want to understand this testimony you pointed me to on 340 because it's different from what I was saying. What I was saying, as the testimony on 245 indicates, is that the original partnership, which began in 1997, was for the purpose of developing the instrument and selling the intellectual property as soon as possible. I was simply distinguishing that from what later turned out to be the determination by the gentleman and the formation of Endocrat, which was then to develop the product themselves and sell it. It seemed to me that the testimony indicated at the outset in 97, they had a different goal than the goal that they then began in 99. Judge- Am I wrong? I disagree with you, Your Honor. What I'm saying, Your Honor, and what I'm pointing to on 333 and 340, and it's in other places, Your Honor, that the goal had always been to develop this business, not just to develop a particular product and just to sell the intellectual property. The goal at the very beginning, as Judge Clevenger pointed out- What about on 245, where they say the goal was to develop a surgical instrument or surgical instruments that we could sell the intellectual property of the highest bidder as soon as we could? Yes, Judge. That was part of it, but that wasn't the only goal. And keep in mind, Your Honor- Yeah, I understand. Aren't we, for purposes of appellate review, we have the judge's finding on the JMAL that there was a partnership from the beginning for a restricted purpose? For a particular purpose. For the particular purpose. Correct, which was to create this business. That is in Judge Talwani's decision. And we can't go behind that. And the question, as I understood it from the district court judge, was that there was a shift of gears in 99 reflected by the creation of Endocraft and the sales relationship with your client, and that that sufficiently shifted the gears to have terminated the partnership that previously existed. No, Your Honor, it did not. It did not do that. That's that's- So that's her theory. Yeah, that's her theory. And your argument is, how can that theory work when there is testimony from Zytel's confirmed by Fusco that the original partnership, whatever it was for, continued after those events? Exactly. That's part of it. Well, if I could just sort of clarify, there's not testimony from Dr. Zytel that the partnership continued. There's testimony, which the district court felt compelled to credit under her standard of review, that Dr. Zytel made the statement to Dr. Devone. Well, that's correct. But, Judge, keep in mind that this was a jury coming from up here from a jury verdict that's been reversed. Right.  And Dr. Zytel testified, Your Honor, that there never was a partnership from the beginning, that the statement to Mr. Fusco never occurred. But the jury is entitled, after a nine-day trial, going through a ton of evidence to reach the opposite conclusion. But here's the problem. I mean, you've stood up here now for nearly eight minutes and you have not at all contended with the ISRA, which is your biggest impediment of the case. You don't do yourself a service by standing here as the appellant and telling me about the things that are good for your case, but ignoring the things that are bad for your case. In 1999, your client signed a contract agreeing that he was simply an independent contractor and not a partner. So what does it matter if on page 340 he says, Well, yes, I signed the contract. And yes, the contract says exactly that in no uncertain terms. And yes, I sent an email recognizing that that's what concerned me about the contract. But even though I signed it, Dr. Zytel told me it didn't really mean anything. What the heck? I mean, why does that mean there's still a partnership when your client signed a document saying he understands there is not a partnership and he's only an independent contractor? Okay, so there's two things I want to address. First is what the standard that the district judge is supposed to apply. The standard is that the evidence has to be so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it because the jury ruled in Mr. Devona's favor. So that's the standard that the district judge was supposed to apply and on DeNova review that this court applies. It's not whether... But there's a legal document. All right, let me address that. No, with the document. Doesn't Rhode Island law clearly say that you can be a partner and employee at the same time? Yes, Your Honor, absolutely. But the document doesn't just say you're an employee. The document says you're not a partner. There's a difference. Well, but it says that they're not a partner. He's not a partner in Endocraft. It does not say that this umbrella partnership doesn't exist. In fact, the jury was entitled to conclude based on the evidence that this umbrella partnership existed. I'm sorry, I don't understand what you're talking about. It's my understanding that the assets that he now wants 40% of were related to the sale and elimination of Endocraft. Am I not right? No, this was the damages that the jury awarded were damages for profits that were not provided to him. Related to Endocraft. It was the partnership. You can't have this ethereal partnership. We're partners. I don't know what this ethereal partnership pertains to. There is a company. That company is Endocraft. There is a document that you signed saying, I'm not a partner of Endocraft. So how is it that you think you can claim 40% of the profits from Endocraft as a partner? Let me start with the sales agreement, Your Honor. Look, your client might have gotten schnookered. And maybe this other guy is not a good guy. I can't make those kinds of determinations. And maybe the jury did. But he signed a document, a legal document, saying he understood he was not a partner. Okay, but let's go to what the evidence actually said that was before the jury. That is the evidence that was before the jury. What was also that the jury could credit was that Dr. Zeitels told Mr. Devona that he would never enforce that sales agreement. As to certain provisions, right? No, as to it all. And in fact, the evidence was in the record, Your Honors, that it wasn't complied with. He didn't get paid under the ISRA. No, sometimes Dr. Zeitel paid him more than he had to. But the more than he had to, like the $50,000 payment or the $75,000 payment, absolutely were not, do not key to 40% of the profitability of the business because the years in which he received those extra payments, the business was in fact unprofitable. So rather than that being an indication of his partner status, to me it's an indication of his employee status. You know, my husband's a partner. The firm doesn't make money, we don't get paid, right? The firm doesn't say, oh yes, but we're going to pay you anyway. But they do do that with their employees. The employees get paid anyway. The employees get bonuses even. But partners don't. I thought that the jury heard evidence that there was this umbrella partnership and that the business of the partnership was going to be conducted through endocrine. Exactly, Your Honor. That's exactly right. My understanding of partnership law, people do that all the time. They have an overarching partnership and they choose to use some, whether it's a sole proprietorship or some other instrumentality, to achieve the purposes of the partnership. You're absolutely right, Judge, and that's what Rhode Island law says. And the jury was entitled to reach that conclusion. Now, Judge Moore, if you were on the jury, certainly you are entitled to have reached a different conclusion based upon your common sense, your experience, whatever it might be. But, Your Honor, with all due respect, you're not on the jury. So the standard is completely different here. The jury, after a nine-day trial, after hearing a lot of evidence and considering counterclaims and co-inventorship issues and partnership issues, But none of that has anything to do with was he a partner or not. There's a legal document that he signed saying he was not. He sent an email expressing his own concern about the fact, Hey, wait a minute, this document says I'm not a partner, and then he signed it anyway. As a matter of law, I don't see how his later testimony, but Cecil told me he wouldn't enforce it against me. I don't see how that overcomes the document and the evidence. Excuse me. Sorry, Your Honor. That's okay. Go ahead. The evidence is not just that I won't enforce that representative agreement, but that our existing umbrella partnership, that preexisted Endocraft by two years, continues unabated, and that Endocraft is merely the vehicle through which we will carry out our umbrella partnership goals. I think, if I'm not mistaken, the argument that Judge Moore has made forcefully that the agreement was the sole and thorough expression of the relationship between your client and the circumstances, that was pitched to the jury by your adversary. Absolutely, and they rejected it. And they rejected it. So they heard that argument, and they could have believed it, but they obviously didn't, because if they believed it, they couldn't have. You're absolutely right, Judge. But, in fact, doesn't the document say that? Doesn't the document say that it is the complete and utter agreement between the parties and that nothing else? No. It says between Endocraft and my client, not between Dr. Zeitel's and my client, and that's the key distinction. I don't understand. Endocraft is the only thing for which damages can be sought. There are no damages that your client is seeking outside of the sale of Endocraft. I disagree with you, Your Honor. The jury heard complicated damages testimony and concluded that the value of the partnership was the enterprise value was worth something. And, secondly, that the lost profits during the lifetime of this partnership, also, he was entitled to 40% of that. Now, would the damages predicated on anything other than Endocraft and the partnership being one and the same? Well, Judge, the expert obviously had to have some information, and he used Endocraft information, but in coming up with the damages calculations, he valued the partnership, a component of which was certainly Endocraft. Well, not a component. It's an entirety. The two were equivalent, one and the same. Was there anything beyond the Endocraft financial situation that was factored into the damages ascribed to the partnership? No, I don't believe so, Judge. Okay, so under the calculation, the partnership and Endocraft were one and the same. For purposes of damages, that's correct. Didn't the jury hear testimony that the reason for creation of the corporation was Dr. Zeitels wanted to have it for either shielding personal liability or other reasons? That's exactly right. It wasn't as if you need the corporation to carry out the purposes of the partnership. The jury could have heard that the reason for the corporation was for that reason, so, in essence, the corporation and the partnership are the same in their mind. Right, exactly. Just so you know, the other side knows where I'm coming from as well. The thing that concerns me is that the case wasn't tried on a shifting gears theory. The jury didn't hear any testimony at all about the nature of the partnership changing from the other side saying it. Correct. You put in three, I saw three pieces of testimony, two from what your client said and the other, Fusco, all seemed clearly after the events that the judge felt broke it all. Right, exactly. Or supportive of the fact that it didn't break it all. And then when the judge says in her opinion, I accord those statements, the three I'm talking about, full weight, not some weight, not a little bit of weight, but full weight. So what I couldn't, what I can't understand is how you can give full weight to those three factors and still conclude that the creation of the corporation and the agreement killed it all. Right. Where Rhode Island law clearly allows you to run a partnership through a corporation and the sales agreement was between Endercraft and the employee and the law doesn't preclude you from being an employee and a partner. That's right, Judge. And I think what she, I know my time is up, Your Honor. If I could just answer Clevenger's question. Oh, I just want to say one other thing. Sure. That troubled me, although it's not a piece of your appeal, the shifting of gears shows up very late in the game. It doesn't appear in the 50A motion or the memorandum in support of the 50A. It doesn't show up in the 50B motion. It shows up in the memorandum in support of the 50B motion. Well, Judge, Late in the game. Well, that's right. That's right. I just wanted to go back to your previous point, which is it seemed to us, Your Honor, that the district judge took that favorable quote, favorable to the jury verdict, put it aside, and said, let's look at each individual piece of evidence to see if it fits into a partnership. She took each piece, said no, said no, said no, without looking at the totality of the circuit. But it doesn't fit in any better after 99 than before. All of it. What went on after 99, unless you believe the formation of the corporation and the agreement were game changers. The same was true. The doctor was paying all the money, and Zytel was doing all the work. Exactly. And that's appropriate under partnership law in Rhode Island. Can I just understand your theory here? So under your theory, you've got two different entities, an umbrella partnership, Correct. and then Endocrat. Correct. And is it your view that the umbrella partnership owns the entirety of Endocrat? Yes, it's an asset. I would characterize it as an asset of the umbrella. But the way... But the only asset. So they're one and the same in your view. Yes, at that point. But keep in mind what they testified to was that Endocrat was the vehicle to achieve the partnership objectives which didn't change from 1997 to 2011. But wait, for 97 to 99, there was no other entity. You're right. I'm sorry. I misspoke. 1999 to 2011. But the umbrella partnership existed from 1997 to 2011. And under Rhode Island law, a continuation of a business by a partner is prima facie evidence that the partnership continues. So even though there's this quote switching gears, the only thing that happened there was they went from an outside manufacturer to Dennis Devona spending most of his time overseeing the manufacturer and sales. Well, that's not the only thing that happened. They went into business. They created a different business. He signed the agreement that Judge Moore highlighted repeatedly. They signed the agreement. They operated in a way that does not suggest that there was any partnership whatsoever. We've got 99 to 2000... 11. How many years? 11. Okay. And the testimony we've talked about was all around the period of the change. But after 99, we've got the agreement. Which was not enforced. And Dr. Devona, Dr. Zaitel's told Dennis Devona he would not enforce it. In fact, he never did. He didn't even abide by it. But you've got an entity that was operating. And it was operating with Mr. Zaitel being listed on all the documents as the sole owner and the sole person in charge. Right? And checks and all of this stuff being done as if it was operated and he was the sole provider. No, Judge. Dennis Devona guaranteed the credit card debt. Dennis Devona agreed to share losses. They held Dennis Devona out to third parties as a partner. As Judge Clevenger said Endocraft was really formed just to protect Dr. Zaitel's from product liability. I mean, it's very common for a partnership to create an underlying entity to protect themselves from product liability or other types of liability. But why would it be just Dr. Zaitel and not Mr. Devona also as part of that? Because Dr. Zaitel did it first. He was the one that created Endocraft. He did it without consulting originally with Dennis Devona. But there's a lot of evidence that, in fact, a partnership continued. Dennis Devona was doing all the work and  again I respectfully ask the court to keep in mind what the standard is here. The standard is that no reasonable jury could have reached the conclusion that it did. That's the standard that this court has to apply to Novo. It's not that you would decide differently as a jury. It's could a reasonable jury have reached this conclusion? And sure, there may be some evidence that favors Dr. Zaitel. The judge realized on the summary judgment saying this case is going to go to trial, the evidence of the partnership may be thin. Which we can all agree. I mean, it's thin. But the question is, is it there? And on the JMAL the judge says the jury was correct in finding that there was an original partnership for a specific purpose that at least lasted until 99. And so then the question is and then are the circumstances after 99 sufficiently different to say that that partnership was collapsed? And there's no evidence, no one testified that it dissolved. Dr. DeVona? That's partly because your adversary chose to put its eggs in the no-partnership-at-all basket. That's correct. And as a matter of fact, they lead off their red brief by saying even the district court found there was no that what we're hearing now were ships that never passed each other at trial. May I? Thank you. Thank you. Good afternoon, Your Honors. The timeline here is absolutely crucial and the Fusco statement, Your Honor, was not after the formation of Endocraft. The testimony here He testified that it was late 99 or 2000. No, when he testified, Your Honor, and this is at page 595 in the appendix, he was asked when that statement was made. Had to have been sometime in late 1998. That's months before the formation. He clarified himself later. He did not. Your best recollection is late 1998 in that range, yes, sir. And then he was asked that it took place after. He never said in any non-speculative manner that it took place after the formation of Endocraft. I know the plaintiffs argued that you're allowed to draw an inference that maybe it was after. But if we were here on a, for example, statute of limitations case, and the plaintiff says late 1995, where he says his best recollection is 98, and you can look at page 602 where he says late 90s, not late 1999. So it's actually, it's been troubling that we've heard. If I'm wrong, I apologize. But I don't know if it's late 1990s, early 2002.  jury could infer, right? They could not infer, Your Honor. The late 90s, I would say, starts 98, which is what he said his best memory was. If it's up to early 2000, the average of the range is outside the relevant period. This is cumulative evidence to  pieces of testimony that said the umbrella partnership continues. If the jury hears it, it's cumulative. The jury did hear Fosco saying that it was possibly 2000. It is not true, Your Honor. It really isn't, because his best memory was that it was 1998, and even when he gave a broader range. The other statement as well, Your Honor, to the point of the science. You agree that your first statement in your brief is incorrect. I just agree with  I don't think that the jury found a partnership up to 1999. So this statement is incorrect. What about the statement that we were talking about early on on page 345 where she credited the fact that this statement, Dr. Zeidel made this statement to Devona. So are we supposed to say, well, he made it and he was lying? So, Your Honor, that statement was prior to the signing of the ISRA. And as Judge Moore has pointed out, the ISRA, the sales representative agreement, has an integration clause.  were prior to the signing of the ISRA? They were prior to the signing of the ISRA. The ISRA was signed in June of 1999. These statements were made in May. So there is a conversation which occurs in May. Supposedly, the statement is made and then the following month, the plaintiff signs an agreement which has an integration clause with Dr. Zeidel who is the sole member of the LLC concerning exactly the same document concerning the identical subject matter. What they're saying is that we are not partners in Indocrat but that doesn't dislodge the umbrella partnership. The law allows you to be a partner employee at the same time? Not really. We cite case law here and the law is clear. I think there's not actually dispute between the parties as to how the law works. You can be both partners and an employee. However, if you're going to proceed that way then you need to hold yourself out to third parties that way. Have a relationship so that third parties know that you're partners. For example, the ACT medical statement is also before the formation of Indocrat and the signing of the ISRA. That's actually not correct. The ACT statement was in April. Indocrat was created in late April. The statement he's referring to was made in earlier April. Once you get past the letter that Mr. Devone has sent to a customer, he refers to Dr. Zytel's as his boss in writing. When you look at that May letter that your honors have been referring to, this is a letter which has    by Dr. Zytel. I don't understand what full weight means. If the full weight is the partnership continued not withstanding things afterwards the question can't be answered. It's a question of law. The trial court gave full weight to those statements but ultimately applying the factors for the partnership which was set forth in April 1999. So for example when you look at the cases the partnership functioned before I can't think other than the agreement which those are clear it seems to me that the relationship between the two people is the same as before. Putting all the money in and doing all the work. Those are important factors and some factors existed later that could influence   between the two people. So the partnership functioned before I can't think other than the agreement which was set forth    set forth before I can't think other than the agreement which was set forth before I can't think other than the  which was set forth before I  think other than the    was  forth before I can't the agreement which was  forth